1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    VERONIKA A. LANE,                        No. 2:16-CV-0301-CMK

12            Plaintiff,

13        vs.                                  <u>MEMORANDUM OPINION AND ORDER</u>

14    COMMISSIONER OF SOCIAL
      SECURITY,

15

16            Defendant.

17    _____/

18            Plaintiff, who is proceeding with retained counsel, brings this action under

19    42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20    Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21    judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22    before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-

23    motion for summary judgment (Doc. 17).

24    / / /

25    / / /

26    / / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on October 1, 2013. In the application, plaintiff claims that disability began on January 17, 2013. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 13, 2015, before Administrative Law Judge ("ALJ") Phillip C. Lyman. In a June 18, 2015, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): mild bilateral carpal tunnel syndrome, status post bilateral carpal tunnel syndrome release; and trigger fingers, status post surgical intervention;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: the claimant can perform less than a full range of medium work; and
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work as well as other work that exists in significant numbers in the national economy.

After the Appeals Council declined review on December 14, 2015, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

2  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

3  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

4  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

5  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

6  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

7  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

8  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

9  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

10  Cir. 1988).

11

12                                    **III.  DISCUSSION**

13           Plaintiff argues: (1) the ALJ improperly rejected the opinions of treating and

14  examining doctors; (2) the ALJ failed to provide adequate reasons for determining plaintiff's

15  testimony was not credible; and (3) the ALJ erred in determining that plaintiff can perform her

16  past relevant work as well as other jobs that exist in the national economy.

17       **A.       Evaluation of Medical Opinions**

18           The weight given to medical opinions depends in part on whether they are

19  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

20  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

21  professional, who has a greater opportunity to know and observe the patient as an individual,

22  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

23  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

24  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

25  (9th Cir. 1990).

26  / / /

1          In addition to considering its source, to evaluate whether the Commissioner

2    properly rejected a medical opinion the court considers whether: (1) contradictory opinions are

3    in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

4    uncontradicted opinion of a treating or examining medical professional only for "clear and

5    convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

6    While a treating professional's opinion generally is accorded superior weight, if it is contradicted

7    by an examining professional's opinion which is supported by different independent clinical

8    findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

9    1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

10   rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

11   81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

12   the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

13   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

14   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

15   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

16   without other evidence, is insufficient to reject the opinion of a treating or examining

17   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

18   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

19   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

20   see also Magallanes, 881 F.2d at 751.

21          Plaintiff argues that the ALJ erred with respect to the opinion of examining

22   physician Dr. Karvelas and the opinion of treating physician Dr. Sharma.

23   / / /

24   / / /

25   / / /

26   / / /

4

1          1.    Dr. Karvelas

2          As to Dr. Karvelas, the ALJ outlined a history of five surgeries plaintiff

3    underwent to address wrist and finger difficulties and noted: "According to Brian Karvelas,

4    M.D., a Qualified Medical Evaluator for workers' compensation, the claimant's surgical outcome

5    was 'good.' (1F/44)."  The ALJ noted Dr. Karvelas' largely normal objective findings from May

6    2013, and added:

7          . . .At the time, Dr. Karvelas indicated that the claimant was not yet at the
           point of maximum medical improvement (1F/44).  He restricted her from
8          repetitive manipulations and forceful activities and indicated that her
           prognosis for returning to work was guarded, as she might require
9          additional interventions (1F/44, 46).

10   The ALJ also noted Dr. Karvelas' similar unremarkable findings from October 2013.  According

11   to Dr. Karvelas, by October 2013 plaintiff had reached maximum medical improvement.  As to

12   objective factors, the ALJ outlined the following:

13         . . .He [Dr. Karvelas] noted the objective factors in his assessment
           included:
14
              [O]perative scars including at the bilateral carpal tunnels and
15            multiple trigger finger releases, slight triggering at the left and right
              middle finger on active motion, localized tenderness, positive
16            Tinel's sign at the carpal tunnel bilaterally, positive Phalen's
              maneuver bilaterally, reported operative findings, and findings on
17            electrodiagnostic testing consistent with carpal tunnel syndrome
              including findings for residual mild carpal tunnel syndrome on the
18            right and left on electrodiagnostic testing performed as part of this
              examination.
19

20   The ALJ then discussed the doctor's opinions:

21         . . .With regard to work limitations, he [Dr. Karvelas] indicated that she
           was restricted from repetitive manipulations (no more than two hours
22         maximum per day), restrictions from performing repetitive forceful
           activities and forceful activities in general on more than an infrequent
23         basis (e.g., grasping, pinching, holding, torqueing, pushing, pulling, and
           lifting more than 10 lbs.).  Dr. Karvelas also limited her to lifting a
24         maximum of 25 lbs. (2F/10).

25         He appeared to base part of his assessment on the claimant's continued
           subjective complaints of pain and reported difficulty with hand-related
26         functioning (see 2F/6).  The claimant rated her pain as averaging 3/10,

1    where 0 is no pain and 10 is excruciating pain (2F/6). The claimant
     reported that she has difficulty with buttons and zippers; drives with an
2    open hand to control the wheel; is limited in performing yardwork; and
     with any activity requiring forceful grasping or other activity. She
3    indicated that she no longer participated in many of her previously favorite
     activities, such as stringing beads (2F/6). Yet, in 2014, the claimant was
4    continuing to report beading as her hobby (*see, e.g.,* 14F/24).

5    As indicated, Dr. Karvelas appeared to rely heavily on the claimant's self-
     reported symptoms and limitations in formulating his disability ratings and
6    work limitations (*see* 2F/10-14). Given that the objective evidence
     indicates only minimal limitations, the undersigned gives Dr. Karvelas'
7    opinions little weight. . . .

8    Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting Dr. Karvelas'

9    opinions regarding repetitive manipulations, repetitive forceful activities, and forceful activities

10   in general.

11          As to manipulations, the ALJ concluded that plaintiff has the residual functional

12   capacity to handle and finger frequently with both hands. Dr. Karvelas opined that plaintiff's

13   work limitations include a "restriction from repetitive manipulations (no more than two hours

14   maximum per day)." Defendant argues that no error exists because the ALJ's residual functional

15   capacity assessment does not "conflict" with Dr. Karvelas' opinion. The court does not agree.

16   Though the ALJ's assessment and the doctor's opinion do not conflict in that the ability to

17   perform handling and fingering manipulations frequently does not preclude a limitation on the

18   ability to perform repetitive manipulations for up to two hours per day, the ALJ nonetheless did

19   not include any limitations on repetitive manipulations. Despite the lack of "conflict," the issue

20   remains whether the ALJ provided sufficient reasons for rejecting Dr. Karvelas' limitation on

21   repetitive manipulations. The test for error is not whether the ALJ's assessment is in conflict

22   with the doctor's opinion, but whether the ALJ's reasoning is supported by the law and the

23   evidence.

24   / / /

25   / / /

26   / / /

Here, the ALJ rejected Dr. Karvelas' opinions on repetitive manipulations, as well as those on repetitive forceful activities and forceful activities in general, because the doctor "appeared to base part of his assessment on the claimant's continued subjective complaints of pain and reported difficulty with hand-related functioning" and he "appeared to rely heavily on the claimant's self-reported symptoms and limitations in formulating his disability ratings and work limitations." The ALJ based this conclusion on plaintiff's report that she continues beading as a hobby as well as the objective evidence which, according to the ALJ, indicates only minimal limitations. The ALJ also based this conclusion on Dr. Karvelas' own objective findings.

The court does not agree with plaintiff that the ALJ improperly substituted his own interpretations of the objective findings for the doctor's. Specifically, while Dr. Karvelas observed positive Tinel's sign and positive Phalen's maneuver, as well as triggering, the doctor himself characterized those specific findings as "slight" and "mild." In light of the doctor's own minimal objective findings, the ALJ's assessment of Dr. Karvelas' opinion is supported by the record.

2. Dr. Sharma

As to Dr. Sharma, the ALJ stated:

> In December 2013, Dr. Sharma, the claimant's treating physician and surgeon, completed a medical source statement (4F). She indicated that the claimant's prognosis was better after surgery (4F/2). Dr. Sharma noted that the claimant continued to have stiffness and pain in her right thumb and fourth fingers, as well as tenderness in both wrists (4F/2). She believed that the claimant's experience of pain would be a constant interference with the claimant's attention and concentration for even simple work tasks (4F/3). Dr. Sharma opined that the claimant has the following physical limitations: no lifting weights heavier than 10 lbs.; no handling more than two hours a day; and no fingering beyond 90 minutes a day (4F/3-4). She indicated that the claimant could use a register for a maximum of two hours (4F/4). Finally, Dr. Sharma noted that these restrictions were permanent (4f/4).

> While Dr. Sharma is the treating surgeon, her opinions are given little weight. The record contains a dearth of objective clinical or laboratory findings to support the restrictions indicated. For instance, there is no evidence of atrophy or even of aggressive treatment with pain medications (*see* 14F; 15F). Furthermore, more recent medical examinations make no

mention of wrist or finger abnormalities (*see*, *e.g.,* 6F/21 (range of notion and strength intact)). The evidence post-surgery also does not reflect ongoing medical treatment for wrist and hand pain (*see* 14F; 15F). As of the hearing, the claimant did not testify that she was [taking] pain medication for the condition; instead, she indicated that she was using conservative home remedies (Hearing Testimony).

Plaintiff argues that the ALJ failed to give Dr. Sharma's opinion the deference due a treating surgeon.

The court finds that the ALJ's assessment of Dr. Sharma's opinions is supported by substantial evidence and proper legal analysis. Specifically, the doctor's opinions of extreme limitations are contradicted by other opinions in the record. As such, the ALJ was required to cite specific and legitimate reasons for rejecting Dr. Sharma's opinions. The ALJ cited such reasons by noting that plaintiff's medical records post-surgery do not reflect ongoing complaints of or treatment for wrist and hand pain, plaintiff was not taking pain medications as of the hearing, and she was using conservative home remedies.

## B. Credibility Assessment

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

1    If there is objective medical evidence of an underlying impairment, the

2    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3    because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d

4    341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

5            The claimant need not produce objective medical evidence of the
         [symptom] itself, or the severity thereof. Nor must the claimant produce
6        objective medical evidence of the causal relationship between the
         medically determinable impairment and the symptom. By requiring that
7        the medical impairment "could reasonably be expected to produce" pain or
         another symptom, the Cotton test requires only that the causal relationship
8        be a reasonable inference, not a medically proven phenomenon.

9        80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
         Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
10

11    The Commissioner may, however, consider the nature of the symptoms alleged,

12    including aggravating factors, medication, treatment, and functional restrictions. See Bunnell,

13    947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the

14    claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

15    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

16    prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

17    physician and third-party testimony about the nature, severity, and effect of symptoms. See

18    Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the

19    claimant cooperated during physical examinations or provided conflicting statements concerning

20    drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the

21    claimant testifies as to symptoms greater than would normally be produced by a given

22    impairment, the ALJ may disbelieve that testimony provided specific findings are made. See

23    Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24    / / /

25    / / /

26    / / /

1          Regarding reliance on a claimant's daily activities to find testimony of disabling

2   pain not credible, the Social Security Act does not require that disability claimants be utterly

3   incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

4   repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . .

5   does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

6   Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

7   Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

8   claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

9   restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

10  claimant was entitled to benefits based on constant leg and back pain despite the claimant's

11  ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

12  activities are not easily transferable to what may be the more grueling environment of the

13  workplace, where it might be impossible to periodically rest or take medication").   Daily

14  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

15  his day engaged in pursuits involving the performance of physical functions that are transferable

16  to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

17  before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

18  Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

19          As to plaintiff's credibility, the ALJ stated:

20          Despite the claimant's testimony that continued hand pain prevents her
            from working, neither the medical records nor her activities of daily living
21          support such an extreme limitation of functioning.  As of November 2013,
            the claimant was continuing to cook, clean, drive, shop, fish, garden, do
22          yoga, write, and exercise (4E; *see also* 15F/35; 6F/21).  She testified at the
            hearing to continuing to perform many of these activities (Hearing
23          Testimony).  The crux of the claimant's allegations is that she must now
            modify her activities to put less strain on her hands (*see* 4E; Hearing
24          Testimony).  Yet, gardening, which requires use of the hands, was the
            claimant's most active hobby as of November 2013 (4E/6).  At that time,
25          she reported that she had stopped beading "for now" (4E/6), but she
            continued to mention beading as a hobby at psychiatric visits through
26          March 2015 (*see, e.g.,* 14F/24; 6F/21).  In May 2014, she told her

treatment provider that she was staying active and getting her house ready for sale (9F/13). She had painted a room in the house and had been playing Ping-Pong – both activities requiring use of the hands and wrists (9F/13).

For the reasons argued above, plaintiff argues that the ALJ's analysis of her credibility is flawed because the ALJ did not properly evaluate the medical opinions. Without explaining how, plaintiff also argues that the ALJ erroneously evaluated her treatment and activities.

To the extent plaintiff argues that the ALJ improperly cited activities of daily living because those activities do not relate to her ability to perform full-time work, the court does not agree. Specifically, plaintiff has alleged disability due, in part, to extreme limitations related to her hands and wrists. Despite these allegations, plaintiff engages in a number of activities requiring use of the hands and wrists. The ALJ appropriately concluded that these activities undermine the credibility of her allegations of disabling hand and wrist impairments.

### C. **Vocational Findings**

Plaintiff argues that the ALJ erred in concluding that she could perform her past relevant work as actually performed. Plaintiff also argues that the ALJ erred in determining that she could perform other work as a packaging machine operator.

### 1. Past Relevant Work

As to past relevant work, the ALJ stated:

> The claimant has past relevant work as a "produce clerk,". . . . The claimant worked at Trader Joe's as a produce clerk. . . .
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed (Vocational Expert Testimony).

Plaintiff argues that the ALJ erred in determining that she could perform her past relevant work as a produce clerk as actually performed because that work involved lifting more than 100 pounds and standing/walking more than six hours per workday, both of which the ALJ found she cannot do. Specifically, plaintiff notes that the ALJ found that she has the residual functional

capacity to stand up to six hours and lift up to 50 pounds. Plaintiff also argues: "Ms. Lane

elsewhere proves that substantial evidence does not support [the ALJ's residual functional

capacity assessment], defeating . . . the ALJ's . . . as-generally-performed finding[]."

A claimant can perform past relevant work if she has the residual functional

capacity to do the job either as she actually performed it or as it is generally performed. See

Pinto v. Massanari, 249 F.3d 840 (9th Cir. 2001). Defendant argues that the court should affirm

the ALJ's finding regarding past relevant work because the ALJ alternatively found that plaintiff

can perform the produce clerk job as it is generally performed. The court agrees. For the reasons

discussed above, the court finds that the ALJ properly evaluated the medical opinion evidence as

well as plaintiff's testimony in assessing plaintiff's residual functional capacity. The ALJ did not

err in relying on vocational expert testimony that plaintiff can perform her past relevant work as

generally performed because it was based on a sound assessment.

### 2. Other Work

As to other work which plaintiff could perform, the ALJ stated:

> . . .The vocational expert testified that given all of these factors [plaintiff's
> age, education, work experience, and residual functional capacity] the
> individual would be able to perform the requirements of representative
> occupations such as a packing machine operator. . ., and a laundry
> worker. . . .

Plaintiff contends that the ALJ violated Social Security Ruling 00-4p by failing to obtain a

reasonable explanation for apparent conflicts between the vocational expert's testimony and the

Dictionary of Occupational Titles ("DOT") with respect to the packing machine operator job.

Assuming without deciding that the ALJ erred, the ALJ's alternate finding that plaintiff can

perform the laundry worker job – a finding which plaintiff does not challenge – supports the

ALJ's occupational determination.

/ / /

/ / /

/ / /

# IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.     Plaintiff's motion for summary judgment (Doc. 14) is denied;

        2.     Defendant's cross-motion for summary judgment (Doc. 17) is granted; and

        3.     The Clerk of the Court is directed to enter judgment and close this file.

DATED:  October 11, 2017

_____

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE